IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


GREGORY R. POWERS,                        6:13-cv-00943-BR

          Plaintiff,                      OPINION AND ORDER


v.

CAROLYN W. COLVIN, Acting
Commissioner, Social Security
Administration,[1]

          Defendant.


JAMES S. COON
Swanson Thomas Coon & Newton
820 S.W. 2nd Avenue
Suite 200
Portland, OR 97204
(503) 228-5222

          Attorneys for Plaintiff

_____

          [1] Carolyn W. Colvin became the Acting Commissioner of Social
Security on February 14, 2013.  Pursuant to Rule 25(d) of the
Federal Rules of Civil Procedure, Carolyn W. Colvin should be
substituted for Michael J. Astrue as Defendant in this case.  No
further action need be taken to continue this case by reason of
the last sentence of Section 205(g) of the Social Security Act,
42 U.S.C. § 405.

1 - OPINION & ORDER

**S. AMANDA MARSHALL**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**DAVID MORADO**
Regional Chief Counsel
**KATHRYN ANN MILLER**
**MATTHEW W. PILE**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2531
(206) 615-2240

        Attorneys for Defendant


**BROWN, Judge.**

    Plaintiff Gregory R. Powers seeks judicial review of a final
decision of the Commissioner of the Social Security
Administration (SSA) in which she denied Plaintiff's application
for Supplemental Security Income (SSI) payments under Title XVI
of the Social Security Act.

    This Court has jurisdiction to review the Commissioner's
decision pursuant to 42 U.S.C. § 405(g).  For the reasons that
follow, the Court **AFFIRMS** the decision of the Commissioner and
**DISMISSES** this matter pursuant to sentence four of 42 U.S.C.
§ 405(g).


2 - OPINION & ORDER

## ADMINISTRATIVE HISTORY

Plaintiff filed his application for SSI on November 18, 2009.  Tr. 21.[2]  The application was denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on January 31, 2012.  Tr. 21.  At the hearing Plaintiff was represented by an attorney.  Plaintiff and a vocational expert (VE) testified at the hearing.  Tr. 21.

The ALJ issued a decision on March 27, 2012, in which she found Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 32.  That decision became the final decision of the Commissioner on May 10, 2013, when the Appeals Council denied Plaintiff's request for review.  Tr. 1.

## BACKGROUND

Plaintiff was born on January 29, 1956, and was 56 years old at the time of the hearing.  Tr. 48, 168.  Plaintiff completed eleventh grade.  Tr. 168, 354.  Plaintiff has past relevant work experience as a chain off-bearer, a commercial/institutional cleaner, a sawmill laborer, and a furnace operator.  Tr. 31.

Plaintiff alleges disability since January 14, 1986, due to partial complex seizures, temporal lobe epilepsy, headaches, bone loss, and blood clots.  Tr. 162.

---

[2] Citations to the official transcript of record filed by the Commissioner on November 5, 2013, are referred to as "Tr."

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence. After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence. *See* Tr. 23-31.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as

adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11
(quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690
(9th Cir. 2009)).  It is more than a "mere scintilla" of evidence
but less than a preponderance.  *Id.* (citing *Valentine*, 574 F.3d
at 690).

The ALJ is responsible for determining credibility,
resolving conflicts in the medical evidence, and resolving
ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir.
2009).  The court must weigh all of the evidence whether it
supports or detracts from the Commissioner's decision.  *Ryan v.
Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even
when the evidence is susceptible to more than one rational
interpretation, the court must uphold the Commissioner's findings
if they are supported by inferences reasonably drawn from the
record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).
The court may not substitute its judgment for that of the
Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir.
2006).


### DISABILITY ANALYSIS

**I.   The Regulatory Sequential Evaluation**

The Commissioner has developed a five-step sequential
inquiry to determine whether a claimant is disabled within the
meaning of the Act.  *Keyser v. Comm'r of Soc. Sec. Admin.*, 648

F.3d 721, 724 (9th Cir. 2011).  *See also Parra v. Astrue*, 481
F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. § 416.920.  Each step is
potentially dispositive.

At Step One the claimant is not disabled if the Commissioner
determines the claimant is engaged in substantial gainful
activity.  20 C.F.R. § 416.920(a)(4)(I).  *See also Keyser*, 648
F.3d at 724.

At Step Two the claimant is not disabled if the
Commissioner determines the claimant does not have any medically
severe impairment or combination of impairments.  20 C.F.R.
§ 416.920(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner
determines the claimant's impairments meet or equal one of the
listed impairments that the Commissioner acknowledges are so
severe as to preclude substantial gainful activity.  20 C.F.R.
§ 416.920(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The
criteria for the listed impairments, known as Listings, are
enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed
Impairments).

If the Commissioner proceeds beyond Step Three, she must
assess the claimant's residual functional capacity (RFC).  The
claimant's RFC is an assessment of the sustained, work-related
physical and mental activities the claimant can still do on a
regular and continuing basis despite his limitations.  20 C.F.R.

§ 416.920(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).  The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis when the ALJ is determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past.  20 C.F.R. § 416.920(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).

### ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since November 18, 2009, his application date.  Tr. 23.

At Step Two the ALJ found Plaintiff has the severe impairments of "seizure disorder, status post traumatic brain injury; mood disorder secondary to physical condition; cognitive disorder, not otherwise specified; and status post deep venous thrombosis, on anticoagulation therapy."[3]  Tr. 23.

At Step Three the ALJ found Plaintiff's impairments do not meet or equal the criteria for any impairment in the Listing of Impairments.  Tr. 15.  The ALJ found Plaintiff has the RFC to perform a full range of work at all exertional levels with the following limitations:

> Plaintiff can never climb ladder, ropes, or scaffolds. He must never work around hazards such as unprotected

---

[3]  The Court notes the ALJ based her findings as to these impairments on the medical diagnoses of Plaintiff that appear in the record rather than statements in Plaintiff's applications. *See* Tr. 23, 162.

heights or moving equipment that can cause crushing or
cutting injuries. [Plaintiff] cannot have public
contact. [Plaintiff] can have occasional, brief one on
one coworker contact. [Plaintiff] can perform simple
tasks that involve objects rather than people and that
can be learned through demonstration as opposed to
verbal instruction or demonstration as a supplement to
verbal instruction in 30 days or less. [Plaintiff]
should not sit for longer than 45 minutes at a time
without brief position changes due to history of deep
venous thrombosis.

Tr. 25-26.

At Step Four the ALJ concluded Plaintiff is unable to
perform his past relevant work.  Tr. 31.

At Step Five the ALJ found Plaintiff could perform jobs that
exist in significant numbers in the national economy such as
salvage laborer, hand packager, and agricultural produce packer.
Tr. 32.  Accordingly, the ALJ found Plaintiff is not disabled.


**DISCUSSION**

Plaintiff contends the ALJ erred by (1) rejecting the
opinion of treating psychologist Joel Garfunkel, Ph.D., and
(2) failing to include all of Plaintiff's medically documented
limitations in the RFC assessment.

**I.    Standard**

An ALJ may reject an examining or treating physician's
opinion when it is inconsistent with the opinions of other
treating or examining physicians if the ALJ makes "findings
setting forth specific, legitimate reasons for doing so that are

9 - OPINION & ORDER

based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Thomas*, 278 F.3d at 957.  *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995).  Generally the more consistent an opinion is with the record as a whole, the more weight an opinion should be given.  20 C.F.R. § 416.927(c)(4).

A nonexamining physician is one who neither examines nor treats the claimant.  *Lester*, 81 F.3d at 830.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Id.* at 831.  When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so.  *See, e.g., Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999).  A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record.  *Id.* at 600.

## II. Opinion of Dr. Garfunkel

Dr. Garfunkel was Plaintiff's treating physician from April 2010 to December 2010 and saw Plaintiff approximately once a

month.  Tr. 500.  In April 2010 Dr. Garfunkel noted Plaintiff
presented as alert and oriented.  Tr. 361.  Plaintiff's speech
content was "generally normal," but Plaintiff showed evidence
of halting speech and somewhat disjointed thinking.  Tr. 361.
Dr. Garfunkel also noted Plaintiff had "difficulty tracking or
switching content" and exhibited a slower pace in identifying,
formulating, and expressing thoughts.  Tr. 361.

        In June 2010 Dr. Garfunkel conducted a four-hour session to
test Plaintiff's capabilities using the Wechsler Adult
Intelligence Scale-IV, California Verbal Learning Test-II,
Controlled Oral Word Association Test, Trailmaking Test, Visual
Organization Test, and Rey 15-Item Memory Test.  Tr. 353-56.
During the testing session Dr. Garfunkel noticed Plaintiff needed
additional instruction on a number of occasions to understand
basic task requirements in the standard instructions.  Tr. 353.
Based on the test results, Dr. Garfunkel found Plaintiff's
capacity to initially acquire and later to recall verbal
information was below average; that Plaintiff exhibited a slower
processing speed; and that Plaintiff had difficulties maintaining
task procedures, particularly as he encountered difficulties.
Tr. 355.

        In November 2011 Dr. Garfunkel completed a Mental Residual
Functional Capacity Questionnaire in which he explained the
symptoms of Plaintiff's mental impairment include difficulty

thinking or concentrating, emotional lability, impaired memory, and being easily distracted.  Tr. 501.  Dr. Garfunkel also stated Plaintiff's test results indicate Plaintiff has significant limitations with memory, processing speed, and the ability to understand instructions for new tasks.  Dr. Garfunkel opined he did not expect Plaintiff's cognitive function to improve. Tr. 500.  Dr. Garfunkel assigned Plainitff a GAF[4] of 50 and opined Plaintiff does not have the useful ability to complete a normal workday and workweek without being interrupted by his psychologically-based symptoms.  Tr. 500, 502-03.  Dr. Garfunkel also opined Plaintiff would not be able to meet competitive standards in the following respects:  (1) remembering work-like procedures; (2) understanding, remembering, and carrying out short and simple instructions; (4) maintaining attention for a two-hour segment; (5) sustaining an ordinary routine without special supervision; (6) working in coordination with or proximity to others without being distracted; (7) performing at a consistent pace without an unreasonable number and length of rest periods; (8) responding appropriately to change; and (9) dealing with normal work stress.  Tr. 502.

        Based on Dr. Garfunkel's opinion, the ALJ concluded

---

        [4]    A Global Assessment of Functioning (GAF) score rates a person's psychological, social, and occupational functioning on a hypothetical continuum of mental-health illness.  *See* DSM-1V at 34.

12- OPINION & ORDER

Plaintiff "has some cognitive limitations resulting from his head injury," and the ALJ accounted for those limitations in her assessment of Plaintiff's RFC. Tr. 29. The ALJ, however, did not give "much weight" to the remainder of Dr. Garfunkel's opinion because she found his "assessment out of proportion to [his] treatment records and the observations of other medical providers." Tr. 29.

The ALJ also noted Dr. Garfunkel's testing showed Plaintiff's IQ was in the normal range and that other tests showed Plaintiff has mild memory and cognitive issues that are "largely centered around intake and understanding of verbal instructions." Tr. 29. The ALJ concluded there "is nothing in [Dr. Garfunkel's] discussion of [Plaintiff's] test results that would indicate that [Plaintiff] has 'no useful ability to function' or is unable to meet competitive standards in the areas identified by Dr. Garfunkel even under the delimitation provided in the [Mental RFC] form." Tr. 29.

The ALJ, however, assigned "great weight" to the opinion of Plaintiff's treating neurologist, Shelly R. Svoboda, M.D., who opined Plaintiff had only moderate cognitive and social limitations despite her assessment that Plaintiff's seizures were not always completely controlled with medication. Tr. 30, 566. On February 3, 2012, Dr. Svoboda completed a "Medical Source Statement of Ability to do Work-Related Activities (Mental)" form

for Plaintiff.  Tr. 30, 565-66.  Dr. Svboda stated Plaintiff had
moderate limitations with cognitive functions, but he did not
have any limitations in his ability to carry out simple
instructions or to interact with the public.  Tr. 565.
Dr. Svboda opined Plaintiff was moderately limited in his ability
to respond to changes in the work environment and to interact
appropriately with supervisors.  Tr. 566.  The ALJ concluded
Dr. Svboda's opinion was more consistent with the record than the
opinion of Dr. Garfunkel.  Tr. 30.

The ALJ also noted Dr. Garfunkel's opinion was inconsistent
with evidence of Plaintiff's daily activities that include
driving a car, maintaining independent self-care, shopping
independently, and following written instructions.  Tr. 29.

On this record the Court concludes the ALJ did not err when
she gave little weight to the opinion of Dr. Garfunkel because
she provided legally sufficient reasons supported by the record
for doing so.

## I.  Plaintiff's RFC

Plaintiff contends the ALJ erred by failing to include in
Plaintiff's RFC a limitation that accounts for the fact that
Plaintiff suffers from impaired "concentration, persistence, or
pace."

As Plaintiff points out, the ALJ found:

> With regard to concentration, persistence or pace,
> [Plaintiff] has moderate difficulties.  Due to

14- OPINION & ORDER

> [Plaintiff's] head injury, he experienced difficulty in
> his thought process, verbal pace and expression, word
> finding and concentration and tracking.  He was able to
> receive verbal information but he communicated at a
> slow pace.  [Plaintiff] reported problems with
> concentration, staying on task, multitasking and being
> organized.

Tr. 25.

With respect to Plaintiff's mental impairments, the ALJ included the following limitation in her assessment of Plaintiff's RFC:  "[Plaintiff] can perform simple tasks that involve objects rather than people and that can be learned through demonstration as opposed to verbal instruction or demonstration as a supplement to verbal instruction in 30 days or less."  Tr. 25.

Plaintiff contends a "limitation to simple tasks does not adequately account for an impairment in concentration, persistence, or pace."  Pl.'s Br. at 9.  Plaintiff cites to *Brink v. Commissioner SSA*, 343 F. App'x 211 (9th Cir. 2009), to support his argument.  In *Brink* the ALJ accepted the fact that the claimant had moderate difficulty with concentration, persistence, or pace.  *Id*. at 212.  Based on the ALJ's finding, the Court concluded the ALJ's hypothetical to the VE was incomplete because it "should have included not only the limitation to 'simple, repetitive work,' but also [the claimant's] moderate limitations in concentration, persistence, or pace."  *Id*.

Unlike the hypothetical in *Brink*, however, here the ALJ included in Plaintiff's RFC more restrictive limitations than

15- OPINION & ORDER

just "simple, repetitive" tasks in order to account for Plaintiff's limitations in concentration, persistence, or pace. Specifically, the ALJ limited Plaintiff to performing "simple tasks that involve objects rather than people and that can be learned through demonstration as opposed to verbal instruction or demonstration as a supplement to verbal instruction in 30 days or less." Tr. 25. The Court, therefore, concludes on this record the ALJ properly accounted for Plaintiff's cognitive limitations in her assessment of Plaintiff's RFC.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 19th day of June, 2014.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge